## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|  |  |
|---|---|
| DON STRONG, et al., <br><br>                 Plaintiffs, <br><br> v. <br><br> REPUBLIC SERVICES, INC.; BRIDGETON LANDFILL, LLC; ALLIED SERVICES, LLC; WESTLAKE LANDFILL, INC.; and ROCK ROAD INDUSTRIES, INC., <br><br>                 Defendants. <br> _____ <br><br> BRIDGETON LANDFILL, LLC, <br><br>                 Third-Party Plaintiff, <br><br> v. <br><br> COTTER CORPORATION (N.S.L.), <br><br>                 Third-Party Defendant. | Civil Action No.: 4:18-cv-02043 |

## THIRD-PARTY DEFENDANT COTTER CORPORATION (N.S.L.)'S OMNIBUS BRIEF IN OPPOSITION TO PLAINTIFFS' AND BRIDGETON LANDFILL, LLC'S MOTIONS TO REMAND

Third-Party Defendant Cotter Corporation (N.S.L.) ("Cotter") submits this Brief in

Opposition to Plaintiffs' Motion to Remand (Dkt. 23, 24) and Third-Party Plaintiff Bridgeton

Landfill LLC's ("Bridgeton") Motion to Remand (Dkt. 26).

### I.   <u>Introduction</u>

This Court possesses exclusive jurisdiction over Plaintiffs' claims, which are public

liability claims governed by the Price-Anderson Act ("PAA"), 42 U.S.C. §§ 2011 et seq., and

Bridgeton's third-party contribution claim against Cotter, which stem from Plaintiffs' PAA claims.  Since the passage of the PAA in 1957, the federal government has regulated the generation, processing, use, and handling of radioactive materials through a comprehensive federal scheme.  *See Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 212 (1983); *Skull Valley Band of Goshute Indians v. Nielson*, 376 F.3d 1223, 1240-45 (10th Cir. 2004); *see also Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1508 (10th Cir. 1997) ("Hazards arising from atomic radiation were made a particularly federal concern, as to which the state had no authority to regulate.").  Following the proliferation of lawsuits arising out of the 1979 Three Mile Island incident, Congress amended the PAA in 1988 to create an exclusive and retroactive federal cause of action—a "public liability action"—for any "public liability" arising from a "nuclear incident."  *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 477 (1999); *see also McClurg v. Mallinckrodt, Inc.*, Case No. 4:12-CV-00361-AGF, 2015 WL 867455, at *6 (E.D. Mo. Feb. 27, 2015) (citing 42 U.S.C. §§ 2014 (hh), 2014(w)*;* Pub. L. No. 100-408 § 20 (b)(1), 102 Stat. 1084 ("The amendments [governing judicial review of claims arising out of a nuclear incident] shall apply to nuclear incidents occurring before, on, or after the date of the enactment of this Act").  A "nuclear incident," is "***any occurrence***, . . . ***causing***, . . . ***bodily injury, sickness, disease***, or death, or ***loss of or damage to property, or loss of use of property***, arising out of or resulting from the ***radioactive***, toxic, explosive, or other hazardous ***properties*** of ***source***, special nuclear, or byproduct ***material***[.]"  42 U.S.C. § 2014(q) (emphases added).  The allegations in this action fall squarely within this definition of "nuclear incident."

This case arises from Plaintiffs' allegations that, as a result of Defendants' (and Cotter's) conduct, radioactive materials were brought to, and released into the environment in and around West Lake, causing the radioactive contamination of, and damage to, the Boenker property, as

well as bodily injury to Plaintiffs.  The gravamen of Plaintiffs' Amended Petition and Bridgeton's Third-Party Petition is that Cotter's activities in connection with uranium processing operations, and Bridgeton's subsequent management of those materials, caused radiation-based damages to the Boenker property and injury to their persons.  Despite the overwhelming body of case law holding that, under the PAA, federal courts have exclusive jurisdiction over such radiation injuries, Plaintiffs mistakenly argue that the radioactive materials at question in this case fall outside of the scope of the PAA.  As is readily ascertainable from Plaintiffs' Amended Petition and Bridgeton's Third-Party Petition, however, the injuries alleged by Plaintiffs and the radioactive materials giving rise to those purported injuries are precisely the kind that fall within the ambit of the PAA.  Accordingly, this Court has jurisdiction over Plaintiffs' claims, and by extension, Bridgeton's third-party claim for contribution.

Instead of addressing the substance of Cotter's removal petition, Plaintiffs rely on their prior briefing before this Court, which responded to a different notice of removal, by different parties, and based on different circumstances.  Plaintiffs' prior remand motion does not address the central arguments raised by Cotter in its Notice of Removal: specifically, that the plain language and its legislative history of the PAA do ***not*** require an indemnity agreement, and Cotter met all of the requirements to possess the Source Material License that the Atomic Energy Commission ("AEC") issued to Cotter in 1969, as set forth in its application to AEC for such a license.  Thus, contrary to Plaintiffs' assertions that Cotter "does not raise any new arguments or facts" (Dkt. 24 at 5, n. 2), Cotter, who is differently situated from Defendants Bridgeton, Republic Services, Inc., Allied Services, LLC, Rock Road Industries, Inc., and West Lake Landfill, Inc., clearly introduces arguments and facts that were never presented to the Court during the briefing on Plaintiffs' initial remand motion.

Remanding the case (again) and depriving Cotter of its right to a federal forum elevates form over substance and undermines the Congressional intent underlying the PAA.  Bridgeton should not be permitted to thwart Cotter's ability to remove the case through procedural gamesmanship, and Plaintiffs and Bridgeton should not be permitted to avoid federal jurisdiction through artful pleading.  Despite their attempts to artfully plead around the PAA, both Plaintiffs and Bridgeton have asserted PAA claims.[1]

Plaintiffs' and Bridgeton's artfully pled Petitions, and Bridgeton's deliberate foot-dragging - waiting to file its third-party action until over a year had passed since Plaintiffs filed their initial Petition - are clear efforts to handicap Cotter's ability to remove this action to federal court, where it unquestionably belongs.  Indeed, Bridgeton and its co-defendants expressly argued that removal was proper when they removed this case previously, arguing that Cotter's source material license entitled them to the protections of the PAA, even though Cotter was not then a party to the action - which argument this Court rejected.  Clearly, Bridgeton contemplated joining Cotter as soon as this Court issued its prior remand order in October 2017.  *See* Dkt. 24-1 at 29-31; *Strong v. Republic Services, Inc.*, Case No. 4:17-cv-01645-JCH, Dkt. 42 at 29-31 (E.D. Mo.).  Plaintiffs and Bridgeton further prejudiced Cotter's ability to mount a defense because Cotter was joined as a third-party defendant (1) long after document productions (totaling well over a million pages) and exchanges of discovery were substantially completed and (2) on the eve of the commencement of twenty-three depositions of Plaintiffs, scheduled to begin a week after Cotter was served and before Cotter had an opportunity to review (let alone receive) the substantial body of discovery previously exchanged between the parties.

---

[1] Cotter's error in identifying the above-captioned matter in the Original Filing Form was unintentional, and counsel apologize for any administrative inconvenience.

4

Plaintiffs and Bridgeton's procedural arguments should not prevent this Court from reaching the merits of Cotter's removal petition.  To remand this action to state court, notwithstanding the exclusive federal jurisdiction over radiation injury claims, would gut the protection provided to licensees, such as Cotter, under the PAA.  Remanding the action also risks creating inconsistent results with the many cases currently pending in federal court that are connected to the St. Louis Manhattan Project wastes.[2]  Furthermore, *McClurg,* which involves some of the very same Manhattan Project-era materials at issue here, currently has consolidated over 130 separate complaints covering approximately 530 plaintiffs, some of whose claims under the PAA have been pending for nearly seven years.

## II.   Factual Allegations

While Plaintiffs have not brought claims against Cotter directly, their factual allegations involving Cotter form the foundation for Plaintiffs' claims of exposure to radiation from West Lake (and Bridgeton's Third-Party Petition for contribution against Cotter).  Plaintiffs contend they were exposed to "radioactive waste" that "has spread to the Boenker family farm causing personal injury, property damage, and the need for medical monitoring."  Amended Petition ("Am. Pet."), Dkt. 1-2, at ¶ 1.  In particular, Plaintiffs allege that "[i]n 1973, West Lake accepted 40,000 tons of radiological waste," "from Cotter Corporation's Latty Avenue site," which "waste included approximately 8,700 tons of leached barium sulfate residues."  *Id*. ¶¶ 43-45.  Plaintiffs further allege that "[t]his radioactive waste has contaminated the Boenker family farm and each member of the Boenker family was exposed as they lived and visited the Boenker family farm. This exposure includes but is not limited to Uranium 238 (U238), Thorium 232 (Th232), and

---

[2] *See, e.g.*, *Dailey v. Bridgeton Landfill, LLC*, Case No. 4:17-cv-00024-CDP (E.D. Mo.); *Czapla v. Republic Services, Inc.*, Case No. 4:18-cv-00357-JAR (E.D. Mo.); *Kitchin v. Bridgeton Landfill, LLC*, Case No. 4:18-cv-00672-CDP (E.D. Mo.); *Banks v. Cotter Corporation*, Case No. 4:18-cv-00624-JAR (E.D. Mo.).

Uranium 235 (U235), which have all been detected in significant quantities on the Boenker family farm."  *Id*. at ¶ 50.

In its Third-Party Petition, Bridgeton wholly incorporates Plaintiffs' allegations concerning Cotter's alleged disposal of radioactive waste at West Lake and makes additional allegations that Cotter's alleged actions were pursuant to a source material license issued by the AEC.  *See* Third-Party Petition, Ex. 4 to Notice of Removal, Dkt. 1-4 at ¶¶ 6-10, 12-15 ("[a]s part of its handling of radioactive waste, Cotter was issued a material source license ('the License') by the Atomic Energy Commission in 1969" which "covered approximately 8,700 tons of leached barium sulfate residue, among other materials" that "Cotter mixed . . . with dirt from the ground at Latty Avenue and brought" to West Lake).  These allegations all connect back to Manhattan Project operations conducted by Mallinckrodt on behalf of the United States government, and "involve public liability" arising from a "nuclear incident" – all clearly within the intended scope of the PAA.  *See McClurg v. Mallinckrodt LLC*, Case No. 4:12-cv-00361-AGF, Dkt. 262 at 2-3. 12-13.

## III.   Argument

### A.  Removal Standard

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  As Cotter set forth in its Notice of Removal (Dkt. 1) and explains below, this Court has exclusive subject matter jurisdiction over Plaintiffs' and Bridgeton's claims, which assert public liability actions arising under the PAA.

6

### B.  Cotter Raises New Arguments That Demonstrate This Court Has Jurisdiction Over Plaintiffs' Claims

Plaintiffs' reliance on 28 U.S.C. § 1447(d) is misplaced because Cotter's newly filed removal of this action – having only recently been joined in this action by Bridgeton – is not an attempt to have this Court's October 20, 2017 Order ("2017 Order") "reviewed or appealed." Courts have interpreted the language of § 1447(d), which states that a district court's remand order "is not reviewable on appeal or otherwise," to apply to appeals to circuit courts and motions for reconsideration in district courts – not to entirely new removal petitions.  Indeed, the two cases to which Plaintiffs cite concern exactly that: an appeal and a motion for reconsideration.  *See Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 129 (1995) (affirming Sixth Circuit's dismissal for lack of subject-matter jurisdiction because "a court of appeals lacks jurisdiction to review [an] order under § 1447(d)"); *Somerville v. Janssen Pharmas., Inc.*, No. 4:17-cv-1307, 2018 WL 280787, at *1 (E.D. Mo. Jan. 3, 2018) (denying defendants' motion to reconsider order of remand).  Plaintiffs do not – and cannot – cite to any cases that hold § 1447(d) bars a separate notice of removal, by a different, newly added party – which is exactly what Cotter has done here.

Equally meritless is Plaintiffs' claim that this Court's 2017 Order precludes Cotter's arguments here.  *See* Dkt. 24 at 5 (arguing that this "Court also already rejected Cotter's arguments that Plaintiffs' claims 'are really PAA claims in disguise'").  That is because an initial "remand order that expressly addresses the theory of federal jurisdiction does not have *res judicata* effect on subsequent removals based on the same theory, provided that the subsequent removal petitions allege a different factual basis for seeking removal."  *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 493 (5th Cir. 1996).  Furthermore, this Court's earlier opinion cannot have a *res judicata* effect on Cotter, where Cotter was not party to the prior motion.  *See*

*Cardona v. Holder*, 754 F.3d 528, 530 (8th Cir. 2014) ("'Res judicata bars relitigation of a claim if: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action ***and the same parties*** or their privies were involved in both cases.'") (emphasis added) (internal citations omitted).  As discussed below, Cotter raises additional facts pertaining to the Court's 2017 Order, and was not a party to the prior action, and thus, it does not have *res judicata* effect as to Cotter.

Case law shows that 28 U.S.C. § 1446(b) permits more than one notice of removal.  *See Reyes v. Dollar Tree Stores, Inc.*, 781 F.3d 1185, 1188 (9th Cir. 2015); *S.W.S. Erectors Inc.*, 72 F.3d at 492-93; *O'Bryan v. Chandler*, 496 F.2d 403, 409-10 (10th Cir. 1974); *One Sylvan Rd. N. Assocs. v. Lark Int'l, Ltd.*, 889 F. Supp. 60, 62-63 (D. Conn. 1995).  Subsequent removals are permitted when the removing party alleges new facts in support of the same theory of removal, *see S.W.S. Erectors Inc.*, 72 F.3d at 493, or when "an amended pleading, motion, order or other paper" is filed demonstrating that the case has become removable.  *See* 28 U.S.C. § 1446(b)(3); *Reyes*, 781 F.3d at 1188-90 (reversing district court's remand of second removal attempt because state court's recently filed order expanding the definition of the class made the case removable under the Class Action Fairness Act).

Here, this second removal (but first removal by Cotter) is proper because, as discussed below, Cotter presents new arguments and facts to support its removal petition, which go beyond Defendants' previously tried PAA theory of removal.  Moreover, the Missouri state court's October 10, 2018 Order ("Third-Party Order") granting Bridgeton leave to file a third-party petition against Cotter ***specifically contemplated removal by Cotter to federal court.***  *See* Third-Party Order, Ex. 3 to Cotter Notice of Removal, Dkt. 1-3, ¶ 3 ("In the event Cotter Corporation

(N.S.L.) does not remove the Third-Party Claim, or the claim is removed and then remanded, Defendants and the Third-Party Plaintiff may move to re-consolidate the Third-Party Claim for trial with Plaintiffs [*sic*] claim (Plaintiffs agree not to oppose that Motion).").  For the reasons set forth above and because individual claims cannot be removed, only actions, *see* 28 U.S.C. § 1441(addressing removal of "civil actions," and not "civil claims"), Cotter's notice of removal was procedurally proper.

### C.  Bridgeton's Claims Against Cotter Fall within the PAA

As an initial matter, Plaintiffs argue that "[i]n Missouri, claims for contribution are limited to the third-party defendants' liability (if any) for the identical claims pled by plaintiffs: . . . This 'indivisible claim' requirement prevents a third-party defendant from being liable for contribution *when they have no liability to plaintiff on the underlying claim*."  Dkt. 24 at 6 (emphasis added) (internal citations omitted).  While Cotter agrees that it has no liability to Plaintiffs, this has yet to be proven in this litigation.  Certainly, should Plaintiffs prevail in their claims against Defendants, Cotter will assert its affirmative defenses that it is not a joint tortfeasor with Bridgeton, and that the PAA provides it with an affirmative defense against Bridgeton's contribution claim.  Cotter expressly does not waive such defenses by making the arguments herein.  Nonetheless, because Plaintiffs assert PAA claims, Bridgeton's contribution claim also necessarily rests on liability under the PAA.  Although Plaintiffs rely on cases concerning Missouri's Workmen's Compensation Law, these cases simply stand for the unremarkable proposition that this law bars third-party suits against employers for contribution and are wholly irrelevant to whether the PAA applies here.[3]  *See* Dkt. 24 at 6 (citing *State ex rel.*

---

[3] Where applicable, the Workers' Compensation Law expressly bars suits by employees against employers, as well as third party suits against employers, and as such has no bearing on the subject matter of this case.

*Maryland Heights Concrete Contractors, Inc. v. Ferris*, 588 S.W.2d 489 (Mo. 1979) (en banc);

*Sweet v. Herman Bros., Inc.*, 688 S.W.2d 31 (Mo. Ct. App. 1985)).

 Equally unavailing is Plaintiffs' argument that Missouri state courts can address Cotter's

"federal affirmative defense," citing *Dydell v. Taylor*, 332 S.W.3d 848 (Mo. 2011) (en banc).

Dkt. 24 at 7.  *Dydell* involved an affirmative defense under the Paul D. Coverdell Teacher

Protection Act of 2011, a statute that, unlike the PAA, does not vest **exclusive jurisdiction** in the

federal courts.  *See Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) ("We find

that the Price Anderson Act does confer exclusive federal jurisdiction over the claims in this

case.").  Remanding this action to state court would effectively deprive Cotter of its day in court

because claims under the PAA can be heard *only* in federal court.

 **D.  Third-Party Defendants May Remove Cases Based on Independent Federal Question Jurisdiction**

 Even case law on which Plaintiffs and Bridgeton rely acknowledges that under *Lewis v.*

*Windsor*, 926 F.2d 729 (8th Cir. 1991), a third-party defendant may remove an action based on

federal question jurisdiction, provided there is a separate and independent basis for removal.  *See*

*Lytle v. Lytle*, 982 F. Supp. 671, 675 (E.D. Mo. 1997).  Moreover, Cotter's removal on federal

question jurisdiction is permissible because it is based on facts not previously presented to this

Court.  *S.W.S. Erectors Inc.*, 72 F.3d at 493.

 The PAA governs public liability claims stemming from exposure to source material (*see*

42 U.S.C. § 2014(q) (defining "nuclear incident")), and accordingly, Plaintiffs have asserted

claims under the PAA.  Instead of responding to the substance of Cotter's removal petition,

Plaintiffs rely on the prior briefing between Plaintiffs and Defendants.  In so doing, they fail to

address three key arguments from Cotter's removal petition that were not presented to the Court

previously.  First, as expressly stated in that statute, the PAA does not require an indemnity

agreement for the PAA to apply.  *See* 42 U.S.C. § 2210(a).  Second, the AEC issued a Source

Material License to Cotter in 1969 to possess and handle certain materials (enumerated in the

application for that license) that qualified as "source material" under then-existing regulations.

*See* 10 C.F.R. § 20.3(a)(15) (1969), attached hereto as Exhibit 1.  Third, the Nuclear Regulatory

Commission ("NRC"), the successor agency to the AEC, concluded that the radioactive materials

allegedly disposed of at West Lake by Cotter were source materials, not byproduct materials or

uranium mill tailings.  *See* 1976 Inspection Report, attached hereto Exhibit B to Exhibit 2, at 6.[4]

### i.  The PAA Does Not Require an Indemnity Agreement for Its Protections to Apply

Despite Plaintiffs' attempt to artfully plead around the PAA,[5] the Amended Petition

alleges facts that give rise to claims for public liability under the PAA and, as a result, their state-

law based claims based on exposure to radioactive materials are preempted by the PAA, and this

Court has jurisdiction under the PAA.  Specifically, Plaintiffs maintain that

> [b]ecause Defendants were not licensed to accept or receive radioactive materials,
> and have not entered an indemnification agreement concerning their acceptance of
> radioactive materials, the Price Anderson Act does not apply to the claims being
> brought by Plaintiffs, they are not "public liability actions" brought under 42
> U.S.C. § 2210, and instead they may proceed in state court under state law.

Am. Pet., Dkt. 1-2 at ¶ 39.

However, the plain language of the PAA does ***not*** require there to be an indemnity

agreement:

> [E]ach license issued under section 2073, 2093, or 2111[6] of this title ***may***, . . .
> ***have as a condition of the license a requirement that the licensee have and***

---

[4] Under Fed. R. Evid. 201(c)(2), Cotter requests this Court take judicial notice of this federal agency report.  *See Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transportation*, 831 F.3d 961, 968 (8th Cir. 2016) (taking "judicial notice of publicly available reports from" the Federal Motor Carrier Safety Administration, a division of the Department of Transportation).

[5] Cotter incorporates here, without repeating, its arguments concerning the well-pleaded Complaint rule and artful pleading doctrine from its Notice of Removal.  *See* Dkt. 1.

[6] Section 2093 pertains to source material licenses, whereas sections 2073 and 2111 relate to "special nuclear material" and "byproduct material," respectively.

> **maintain financial protection**[7] of such type and in such amounts as the Nuclear Regulatory Commission . . . in the exercise of its licensing and regulatory authority and responsibility shall require in accordance with subsection (b) of this section to cover public liability claims. ***Whenever such financial protection is required, it may be a further condition of the license that the licensee execute and maintain an indemnification agreement*** in accordance with subsection (c) of this section.[8]

42 U.S.C. § 2210(a) (emphases added).  That is, a licensee with a source material license **may**, but is **not required** to, enter an indemnity agreement with the United States to be afforded the protections of the PAA.

The precursor to this statutory language can be found in the very same legislative history that Plaintiffs presented to the Court in their prior briefing.  *See* Dkt. 24-2 at 6; *Strong v. Republic Services, Inc.*, Case No. 4:17-cv-01645-JCH, Dkt. 22 at 9 (E.D. Mo.).  Following the text that Plaintiffs focus on, the legislative history goes on to provide:

> SECTION 170 OF THE ATOMIC ENERGY ACT IS ADDED AS A NEW SECTION. SUBSECTION A MAKES THE PROVIDING OF FINANCIAL PROTECTION AND **THE SIGNING OF AN INDEMNITY AGREEMENT A CONDITION OF EACH LICENSE UNDER SECTION 103 AND 104** AND EACH CONSTRUCTION PERMIT UNDER SECTION 185. **SECTION 103 LICENSES ARE FOR REACTORS WHICH ARE FOUND TO BE OF PRACTICAL VALUE AND SECTION 104 LICENSES ARE FOR RESEARCH AND DEMONSTRATION REACTORS**. IN ADDITION, THE COMMISSION **IS GIVEN THE OPTION OF REQUIRING FINANCIAL PROTECTION FOR ANY LICENSE ISSUED UNDER SECTION 53, 63, OR 81. . . . SECTION 63 PERMITS LICENSING OF SOURCE**

---

[7] This express language also makes clear that "financial protection" *may* be, but is *not always*, required.  When financial protection *is* required, a licensee may meet that requirement via "liability insurance available from private sources."  42 U.S.C. § 2210(b)(1).  Even authority cited by this Court in the prior briefing on Plaintiffs' remand motion acknowledges that financial protection is not required in all circumstances.  *See* Dkt. 24-1 at 9; *Strong v. Republic Services, Inc.*, Case No. 4:17-cv-01645-JCH, Dkt. 42 at 9 (E.D. Mo.) ("The AEC itself 'was required to enter into an indemnification agreement with any licensee *who was required by license to maintain financial protection*.") (citing 42 U.S.C. § 2210(a) and (b)) (emphasis added). Neither Plaintiffs nor Bridgeton have alleged that Cotter lacked financial protection or insurance. Should they do so in the future, Cotter will address those erroneous allegations at that time.

[8] This Court's prior opinion cites to the text of Section 2210(a) in footnote 5 (in support of the Court's assumption that Cotter, having been granted the 1969 Source Material License, had an indemnity agreement), but because Cotter was not then a party to the action, the opinion does not otherwise address the implications of the text (highlighted above) disclaiming any requirement that holders of source material licenses, such as Cotter, also possess an indemnity from the government.  *See* Dkt. 24-1 at 15, n.5; *Strong v. Republic Services, Inc.*, Case No. 4:17-cv-01645-JCH, Dkt. 42 (E.D. Mo.) at 15, n.5.

**MATERIAL**; SECTION 81 PERMITS LICENSING OF BYPRODUCTS MATERIAL. . . . IN VIEW OF THE FACT THAT THE BILL IS DESIGNED TO ENCOURAGE INDUSTRY TO PARTICIPATE IN THE LICENSING PROGRAM, IT DOES NOT MATTER WHETHER THE LICENSE IS ISSUED TO A PRIVATE FIRM OR GOVERNMENT AGENCY. THOSE CONTRACTORS, SUBCONTRACTORS, **AND ANY OTHER PERSONS WHO MAY BE LIABLE SHOULD BE PROTECTED UNDER THE PROVISIONS OF THIS BILL**.[9]

S. Rep. No. at 85-296 (1957), as reprinted in 1957 U.S.C.C.A.N. 1803, 1820-21 (1957) and 71 Stat. 576-579 (1957), attached hereto as Exhibit 3.  This legislative history underscores that requiring financial protection for holders of source material licenses was an *option*, not a requirement.  This legislative history also demonstrates that there were different concerns at issue with respect to nuclear power plants and reactors versus holders of source, byproduct, or special nuclear material licenses.  The PAA is meant to protect *all* such participants in the nuclear energy field.

One of Plaintiffs' primary arguments concerning the applicability of the PAA, namely, that an indemnity agreement is required, is wholly undercut by the plain language of the statute set forth above, as well as its legislative history.  Similarly, the logic of *Gilberg v. Stepan Co.*, 24 F. Supp. 2d 325 (D.N.J. 1998), is fatally flawed and cannot be relied on by this Court, particularly as the Third Circuit has indicated it is no longer good law.  *Estate of Ware v. Hosp. of the Univ. of Pennsylvania*, 871 F.3d 273, 283 (3d Cir. 2017) ("We are unpersuaded [by *Gilberg*] that an indemnification agreement is necessary to trigger the Act's applicability."), *cert. denied sub nom. Boyer v. Hosp. of the Univ. of Pennsylvania*, 138 S. Ct. 2018, 201 L. Ed. 2d 251 (2018).

---

[9] This text, which extends to "any other persons who may be liable," suggests that Bridgeton and its co-defendants may also be entitled to the protections of the PAA.

### ii.  Cotter Possessed a Source Material License that Entitles It to the Protections of the PAA for Plaintiffs' Claims

It is also without question that Cotter possessed a source material license; indeed, a copy of that license, issued to Cotter by the AEC, was attached to Bridgeton's Third-Party Petition (as well as to Plaintiffs' motion to remand).  At the time of Defendants' removal, this Court was not persuaded that "Cotter's 1969 Source Material License provides a basis for federal subject matter jurisdiction pursuant to the PAA *even though Cotter is not a party to the instant lawsuit*."  *See* Dkt. 24-1 at 31 (emphasis added); *Strong v. Republic Services, Inc.*, Case No. 4:17-cv-01645-JCH, Dkt. 42 at 31 (E.D. Mo.).  Now that Cotter has been joined as a third-party defendant, a party holding a license with the right to claim the protections of the PAA is present in the case. Whether Bridgeton and its co-defendants may claim the protections of the PAA through Cotter's license or not, Cotter, as the license holder, is entitled to the full protections of the PAA.

At the time of the facts giving rise to Plaintiffs' Amended Petition, "source material" was defined as "(i) uranium or thorium, or any combination thereof, in any physical or chemical form; or (ii) ores which contain by weight one-twentieth of one percent (0.05%) or more of a. uranium, b. thorium or c. any combination thereof.  Source material does not include special nuclear material."   Exhibit 1, 10 C.F.R. § 20.3(a)(15) (1969); 10 C.F.R. § 40.4(h) (1969). Cotter's "Application for Source Material License," which the Court did not have before it previously, identified that the subject material was "ore residues" consisting of ".3 to 2.0%" uranium and noted "[t]his source material is presently located at 9200 Latty Avenue, Hazelwood, Missouri."  *See* Cotter "Application for Source Material License," Ex. 6 to Notice of Removal, Dkt. 1-5.[10]  Based on this information and AEC's own knowledge of the materials at issue, AEC

---

[10] This Court previously assumed the authenticity of Cotter's source material license that Bridgeton presented to the Court for purposes of deciding the motion to remand.  *See* Dkt. 24-1 at 4, n.3; *Strong v. Republic Services, Inc.*, Case No. 4:17-CV-01645, Dkt. 42 at 4, n.3 (E.D. Mo.) (citing *Green v. Arizona Cardinals Football Club, LLC*, 21 F.

issued a "Source Material License" to Cotter for materials that Cotter possessed and handled at Latty Avenue.[11]   Among those materials was certain leached barium sulfate residue ("LBSR") that eventually wound up at West Lake.

Moreover, after the alleged 1973 disposal of LBSR at West Lake, the NRC investigated and observed that the LBSR at West Lake constituted source material.  *See* Exhibit B to Exhibit 2, 1976 Inspection Report at 5-6 ("In December 1969 the remaining source material was sold to Cotter . . . The AEC's invitation to bid listed the following residues for purchase: 8700 tons of leached barium sulfate residue" and ". . . the leached barium sulfate along with 38,000 to 39,000 tons of soil had been disposed of in a landfill are in St. Louis County.  The leached barium sulfate contained from 0.05% to 0.1% uranium as $U_3O_8$,"[12] – the definition of "source material" under 10 C.F.R. § 20.3(a)(15)).

The foregoing facts pertaining to Cotter's license application, resulting source material license, and subsequent government inspections reports were not developed or presented to the Court in the prior round of briefing (to which Cotter, the license holder, was not a party, and therefore not able to provide this additional information to the Court).  As a result, the Court was working with incomplete information and Plaintiffs were able to persuade this Court that because Cotter's license did not explicitly state that it covered "radioactive waste," "leached barium sulfate residues," or "radiological waste," "the Court fails to see how Cotter's 1969 Source

_____

Supp. 3d 1020, 1025 (E.D. Mo. 2014) ("Where a complaint raises issues to which federal law applies with complete preemptive force, the [c]ourt must look beyond the face of the complaint in determining whether remand is proper.")).

[11] Cotter has moved to consolidate this action with *McClurg v. Mallinckrodt, LLC*, Case No. 4:12-cv-00361-AGF (E.D. Mo.), given the commonality of facts and legal issues with that case and the Court's issuance of multiple orders providing for the consolidation with *McClurg* of actions involving injuries resulting from alleged exposure to radioactive materials attributable to Mallinckrodt LLC and/or Cotter in the St. Louis area.

[12] By mixing the LBSR with approximately 39,000 tons of soil from Latty Avenue, as alleged by Plaintiffs and Bridgeton, disposal of such a mixture was still in compliance with applicable regulations regarding disposal of "unimportant quantities of source material."  *See* Exhibit 1, 10 C.F.R. § 40.13(a).  In fact, the NRC noted in its 1976 Inspection Report that "[n]o items of noncompliance were identified during this investigation."  *See* Exhibit B to Exhibit 2, 1976 Inspection Report at 3.

Material License applies to Plaintiffs' claims."  *See* Dkt. 24-1 at 26; *Strong v. Republic Services, Inc.*, Case No. 4:17-cv-01645-JCH, Dkt. 42 at 26 (E.D. Mo.).  However, now that Cotter is a party to this action, Cotter, as the license holder, can bring these new facts to the Court's attention, which it clearly was unable to do when the Court first evaluated this remand issue.

Contrary to Plaintiffs' arguments, source material licenses did ***not*** identify the materials covered by their colloquial names, but rather by the radiological elements contained in those materials (*i.e.*, uranium or thorium), per applicable regulations.  Indeed, all of the prior licenses issued for the very same materials identified them as containing uranium and thorium, likely because they met the express definition of "source material".  Exhibit 1, 10 C.F.R. § 20.3(a)(15); 10 C.F.R. § 40.4(h).  *See Banks v. Cotter Corporation,* Case No. 4:18-cv-00624-JAR, Dkt. 52-4, 52-5, and 52-6 (E.D. Mo.), attached hereto as Exhibits C, D, and E of Exhibit 2 (copies of source material licenses issued by the AEC to Contemporary Metals Corp., Continental Mining & Milling Co., and Commercial Discount Corp., all of whom received licenses for the very same materials covered by Cotter's source material license).  Notably, ***none*** of the licenses described the materials covered as Belgian Congo raffinates, Colorado raffinates, C-slag, leached and unleached barium sulfate residues, or other residues.  Had the Court known that Cotter's source material license, which covered "ore residues" consisting of ".3 to 2.0%" uranium, also covered the LBSR, the Court could have taken this into account in its prior analysis.  Certainly, this new information, along with the 1976 inspection report, should inform the Court's decision now.[13]

---

[13] In addition, Cotter infers from the 2017 Order that the Court's decision may have been influenced by purportedly inconsistent positions taken by Defendants regarding the applicability of the PAA in *Strong* versus prior litigations, such as *Adams v. MI Holdings, Inc*., Case No. 4:12-cv-00641 (E.D. Mo.).  *See* Dkt. 24-1 at 3, n.2; *Strong v. Republic Services, Inc.*, Case No. 4:17-CV-01645, Dkt. 42 at 3, n.2 (E.D. Mo.).  To the extent any of Bridgeton's supposedly inconsistent positions factored into the Court's prior decision to remand the action, Cotter should not have to suffer the consequences of Bridgeton's litigation positions.

To the extent Plaintiffs or Bridgeton assert that the radioactive material disposed of at West Lake constituted "byproduct material,"[14] such argument is belied by the express language of Cotter's "Source Material License," as well as the regulatory definitions of byproduct and special nuclear material at the time of the 1973 disposal.  "Byproduct material" was defined as "any radioactive material (except special nuclear material) yielded in or made radioactive by exposure to the radiation *incident to the process of producing or utilizing special nuclear material*."  Exhibit 1, 10 C.F.R. § 20.3(3) (emphasis added).  In turn, "special nuclear material" was defined as "plutonium, uranium 233, uranium enriched in the isotope 233 or in the isotope 235, and any other material which the [AEC], pursuant to the provisions of section 51 of the Act, determines to be special nuclear material; . . ."  Exhibit 1, 10 C.F.R. § § 20.3(a)(16); 10 C.F.R. § 40.4(l).  The material covered by Cotter's license were not "special nuclear material," nor has any party ever alleged that it was.[15]

### iii.  Plaintiffs Allege Personal Injury Claims Pursuant to the PAA

In light of the plain text of the PAA, Cotter's application for a license, the source material license AEC issued to Cotter, and the 1976 NRC report, no conflicting interpretations of the PAA are possible, particularly as the definition of "nuclear incident"[16] includes no reference to a

---

[14] Plaintiffs' Reply Brief in support of Motion to Remand, Dkt. 24-3 at 3-6; *Strong v. Republic Services, Inc.*, Case No. 4:17-CV-01645, Dkt. 38 at 3-6 (E.D. Mo.).  In addition, neither Plaintiffs nor Bridgeton allege that the materials in West Lake are uranium mill tailings. Therefore, Plaintiffs' prior arguments concerning uranium mill tailings are wholly irrelevant.  *See* Plaintiffs' Reply Brief in Support of Motion to Remand, Dkt. 24-3 at 1; *Strong v. Republic Services, Inc.*, Case No. 4:17-CV-01645, Dkt. 38 at 3-6, 13 (E.D. Mo.) (incorrectly arguing Uranium Mill Tailings Radiation Control Act in 1978 controls the radioactive material contained at West Lake).

[15] Plaintiffs' attachment of their prior briefs and incorporation by reference of the arguments contained therein is procedurally improper and violates the fifteen-page limit under Local Rule 7-4.01(D).  Accordingly, Cotter has not responded to each and every argument raised by Plaintiffs in their collective 45 pages of briefing because Cotter's removal is new and independent of Defendants' removal.  Cotter reserves the right to object to any arguments raised in Plaintiffs' prior briefing at a later date, and does not concede any arguments by not addressing each and every one of Plaintiffs' prior arguments here.  However, should the Court deem Plaintiffs' incorporation of their prior arguments proper, Cotter incorporates its prior briefing in *Banks v. Cotter Corporation*, Case No. 4:18-cv-00624-JAR, Dkt. 52 and 65 (E.D. Mo.), attached hereto as Exhibits 2 and 4.

[16] As set forth in Section I, *supra*, a "nuclear incident" is defined as "*any occurrence*, . . . *causing*, . . . *bodily injury, sickness, disease*, or death, or *loss of or damage to property, or loss of use of property*, arising out of or resulting

requirement to possess either an indemnity agreement or a license (although Cotter did in fact

hold the latter).  As set forth in Cotter's Notice of Removal, a public liability action under the

PAA is the **exclusive and retroactive** federal cause of action governing liability for injuries

arising out of nuclear incidents.  *See* Pub. L. No. 100-408 § 20(b)(1), 102 Stat. 1084 ("The

amendments governing judicial review of claims arising out of a [nuclear incident] shall apply to

incidents occurring before, on, or after the date of the enactment of this Act."); *O'Conner v.

Commonwealth Edison Co.*, 13 F.3d 1090, 1099-1100 (7th Cir. 1994) (holding that under the

PAA "a state cause of action is not merely transferred to federal court; instead, a new federal

cause of action supplants the prior state cause of action.").

Given the expansive nature of the PAA, virtually every circuit court to address the issue

has concluded that "the Price-Anderson Act completely preempts state law causes of action for

public liability arising out of or resulting from a nuclear incident."  *Adkins v. Chevron Corp.*, 960

F. Supp. 2d 761, 767-68 (E.D. Tenn. 2012) (observing that the Third, Seventh, Ninth, Tenth and

Eleventh Circuits are in agreement with the Sixth Circuit's conclusion that the PAA completely

preempts state law causes of action); *see also In re Berg Litig.*, 293 F.3d 1127, 1132 (9th Cir.

2002) (observing that a PAA public liability action is plaintiff's "exclusive means" for pursuing

claims arising from a nuclear incident); *Roberts v. Florida Power & Light Co.,* 146 F.3d 1305,

1306 (11th Cir. 1998) ("Congress passed the Price–Anderson Amendments Act of 1988 . . .

creating an exclusive federal cause of action for radiation injury."); *Kerr–McGee Corp. v.

Farley,* 115 F.3d 1498, 1504 (10th Cir. 1997) (observing that the PAA's provisions "appear

broad enough to create a federal forum for any tort claim even remotely involving atomic energy

production. The PAA on its face provides the sole remedy for the torts alleged . . ."); *O'Conner,*

---

from the **radioactive**, toxic, explosive, or other hazardous **properties** of **source**, special nuclear, or byproduct **material**[.]"  42 U.S.C. § 2014(q) (emphases added).

13 F.3d at 1100, 1105 (stating that "a new federal cause of action supplants the prior state cause of action . . . . [S]tate regulation of nuclear safety, through either legislation or negligence actions, is preempted by federal law."); *In re TMI Litig. Cases Consol. II,* 940 F.2d 832, 854 (3d Cir. 1991) ("After the Amendments Act, no state cause of action based upon public liability exists. A claim growing out of any nuclear incident is compensable under the terms of the Amendments Act or *it is not compensable at all.*"); *McClurg v. MI Holdings, Inc.*, 933 F. Supp. 2d 1179, 1186 (E.D. Mo. 2013).  Dkt. 1 at ¶¶ 31-34.  This Court previously stated that *Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088 (10th Cir. 2015) is not dispositive of the issue.  *See* Dkt. 24-1 at 20; *Strong v. Republic Services, Inc.*, Case No. 4:17-cv-01645-JCH, Dkt. 42 at 20 (E.D. Mo.).  In any event, in *Cook*, the Tenth Circuit found that in specific, limited circumstances not at issue here, a plaintiff's state-law causes of action arising from "lesser nuclear occurrences," a phrase appearing nowhere in the text of the PAA, might not be preempted by the PAA.  Plaintiffs have not alleged their claims would stem from a "lesser nuclear occurrence," and because Plaintiffs' claims are preempted by the PAA, Plaintiffs must bring the personal injury and property damage claims that were allegedly caused by exposure to radioactive materials at West Lake that they attribute to Cotter under the PAA.

Plaintiffs, through their Amended Petition, assert claims for injuries, damages and relief that arise from a "nuclear incident," as defined by the PAA, and Plaintiffs hold Cotter partially responsible (along with Bridgeton and the other Republic defendants) for their alleged exposure to radioactive material.  Here, Plaintiffs' claims stem from a "nuclear incident," because the basis for Plaintiffs' Amended Petition, and the state-law causes of action therein, is Plaintiffs' contention that they were exposed to "radioactive waste" that "has spread to the Boenker family farm causing personal injury, property damage, and the need for medical monitoring."  Am. Pet.

¶ 1.  With respect to Cotter, Plaintiffs allege that "[i]n 1973, West Lake accepted 40,000 tons of radiological waste," "from Cotter Corporation's Latty Avenue site," which "waste included approximately 8,700 tons of leached barium sulfate residues."  *Id*. ¶¶ 43-45.  Plaintiffs further allege that "[t]his radioactive waste has contaminated the Boenker family farm" which included uranium and thorium, and each Plaintiff has been exposed to this radioactive waste.  *Id*. at ¶ 50. In short, the factual allegations undergirding Plaintiffs' purported injuries relate to the Defendants' and Cotter's alleged conduct as an AEC licensee in connection with their respective handling of radioactive materials, making this case a public liability action under the PAA as Plaintiffs' "exclusive federal cause of action".  *Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1306 (11th Cir. 1998).

In its Third-Party Petition, Bridgeton adopts Plaintiffs' allegations concerning disposal of radioactive waste at West Lake and also alleges that Cotter's actions were pursuant to its source material license.  *See* Third-Party Petition, Ex. 4 to Notice of Removal, Dkt. 1-4 at ¶¶ 6-10, 12-15 ("[a]s part of its handling of radioactive waste, Cotter was issued a material source license ('the License') by the Atomic Energy Commission in 1969" which "covered approximately 8,700 tons of leached barium sulfate residue, among other materials" that "Cotter mixed . . . with dirt from the ground at Latty Avenue and brought" to West Lake).  To the extent Bridgeton itself does not have the protections of PAA, including with regard to Plaintiffs' allegations of personal injuries from exposure to the effects of the subsurface smoldering event and associated odors from West Lake, this Court may exercise supplemental jurisdiction over Plaintiffs' state law claims against Bridgeton.

Finally, Bridgeton previously consented to removal when it joined in the prior removal petition.  *See Strong v. Republic Services, Inc.*, Case No. 4:17-cv-01645-JCH, Dkt. 1 at 1 (E.D.

Mo.).  Critically, although Bridgeton has filed a motion to remand, Bridgeton agrees with Cotter

that this Court has subject-matter jurisdiction and the action properly belongs in federal court.

*See* Dkt. 26 at 2, n.3 ("Defendant Bridgeton respectfully does not agree with the Court's original

remand decision in this case. . . . Defendants are not . . . waiving any arguments they have or

may have in Missouri state court that Price Anderson still applies to the main claim. Defendants .

. . [are] specifically preserving [their] arguments for federal jurisdiction and preemption.").

### E.  Plaintiffs Misconstrue Cotter's Removal Based on Diversity Jurisdiction

Plaintiffs argue that Cotter removed the entire action on the basis of diversity jurisdiction

more than one year after Plaintiffs commenced their action in state court.  *See* Dkt. 24 at 12.

Cotter's removal on the basis of diversity jurisdiction, however, was solely as between Bridgeton

and Cotter (*see* Dkt. 1 at ¶¶ 13, 59-87), the existence of which no party has disputed.  Therefore,

the one-year limitation on removing cases based on diversity jurisdiction had not yet run as to

Bridgeton's third-party claim.  Had the third-party claim been truly severed from the main

action, Cotter clearly would have been able to remove the third-party action on the basis of

diversity jurisdiction.

Moreover, had Bridgeton not deliberately waited so long before seeking to join Cotter as

a third-party defendant, Cotter may have been able to remove the entire action to federal court on

the basis of diversity jurisdiction, in light of Bridgeton's and Defendants' multiple

representations that Defendant Rock Road Industries, Inc., a Missouri corporation, was merged

into Bridgeton, a Delaware limited liability corporation, and consequently no longer exists.  *See

e.g.*, Dkt. 26. At 2, n.2 ("At the time of that [2017] removal one of the Defendants, Rock Road

Industries, was a Missouri corporation. . . . Since then, Rock Road has ceased to exist as an

independent entity."); *Czapla v. Republic Services, Inc.*, Case No. 4:18-cv-00357-JAR, Dkt. 27

at ¶ 1 (E.D. Mo.) ("Effective April 9, 2018, Rock Road Industries, Inc. merged into Bridgeton Landfill, LLC, . . ."); *Kitchin v. Bridgeton Landfill, LLC*, Case No. 4:18-cv-00672-CDP, Dkt. 39 at 29 ("Plaintiffs also named West Lake Landfill, Inc. and Rock Road Industries, Inc. but neither entity presently exists as an independent entity, each having separately merged into Bridgeton Landfill, LLC.").[17]  Instead, after advising the undersigned counsel shortly after the Strong litigation commenced in May 2017 that Bridgeton would seek to add Cotter as a third-party defendant, Bridgeton failed to do so until its own removal attempt had been rejected and the one-year mark had passed.  *See also* Dkt. 24-1 at 29; *Strong v. Republic Services, Inc.*, Case No. 4:17-cv-01645-JCH, Dkt. 42 at 29 (E.D. Mo.) (noting Defendant' earlier-articulated position that "Cotter may ultimately be held liable for Plaintiffs' damages").

### F.  Attorneys' Fees Are Not Warranted

Even if Plaintiffs prevail on their motion to remand, attorneys' fees are not warranted. Plaintiffs rely solely on *Lytle v. Lytle* for the mistaken proposition that they are entitled to attorneys' fees and conveniently ignore the state court's Third-Party Order that clearly contemplated Cotter would remove to federal court at least the third-party claim (whose "severance" from the main action was unclear at best).  982 F. Supp. 671 (E.D. Mo. 1997).  *See* Ex. 3 to Cotter Notice of Removal, Dkt. 1-3, ¶ 2.  They further ignore controlling case law post-dating *Lytle* that provides "a district court may award attorney's fees where the removing party had *no 'objectively reasonable basis' for removal*."  *Wexberg v. RBS Citizens Bank, N.A.*, Case No. 4:15-cv-01777-JCH, 2016 WL 687845, at *3 (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)) (emphasis added).

---

[17] Defendants have also represented in their motion to remand that West Lake Landfill, Inc. "underwent a name change in 1988 and a subsequent merger in 1997, resulting in its merger into Bridgeton Landfill, LLC."  *Strong v. Republic Services, Inc.*, Case No. 4:17-cv-01645-JCH, Dkt. 1 at 2, n.1 (E.D. Mo.).

*Lytle* did not involve a state court order that severed (or separated) the third-party claim from the main action.  Because the Third-Party Order did not assign a new case number to this action, Cotter could not remove only the third-party claim and had to remove the entire action to federal court.  *See* Ex. 3 to Cotter Notice of Removal, Dkt. 1-3, ¶ 2 ("The Third-Party Claim is SEVERED and will proceed in the above-styled case number under a separate trial schedule"); *see also* 28 U.S.C. § 1441(a) (referring to removal of a "civil action" rather than a "civil claim"); *Stratford Mokane Dev. Corp. v. Nat'l Fire Ins. of Hartford*, No. 09-CV-00990-W-DGK, 2010 WL 11619024, at \*3 (E.D. Mo. Apr. 2, 2010) (discussing the difference between separated claims under Missouri Rule 66.02 versus severed claims under Missouri Rule 52.06, "so the Court is unable to consider whether the state court's intention was to actually sever[] the claims or to simply provide separate trials.").  Against this procedural backdrop, awarding attorneys' fees to Plaintiffs is unwarranted because Cotter had ample objectively reasonable bases for removal.

## G.  This Court Should Not Sever Bridgeton's Third-Party Claim.

The Court should deny Plaintiffs' alternative request to sever Bridgeton's third-party claims.  Cotter should not be hindered from advancing its defenses and participating in discovery while Plaintiffs develop their case against Third-Party Plaintiff Bridgeton (and Bridgeton develops its defenses, casting blame on Cotter).  This is particularly so considering that, in the sole case Plaintiffs rely on, the court severed third-party contribution claims based on a variety of factors absent here, including a demonstrated "lack of commitment to third-party plaintiffs' stated intention of seeking contribution where it may legally be available," because they "did not attempt to join . . . domestic gun manufacturers from which they might more reasonably expect contribution" and instead joined foreign sovereign-owned entities that they made no effort to

serve.  *See City of St. Louis v. Cernicek*, No. 4:00-CV-1895-CEJ, 2001 WL 34134733, at *4 (E.D. Mo. Sept. 25, 2001).

### H.  Cotter Requests This Court Certify to the Eighth Circuit the Question of Whether an Indemnity Agreement Is Required for the PAA to Apply.

Should the Court be inclined to grant Plaintiffs' and Bridgeton's motions to remand, Cotter requests that the Court stay the order to remand, certify to the Eighth Circuit the question of whether an indemnity agreement is required for the PAA to apply, and also stay all further proceedings while the interlocutory appeal is pending.[18]

Under 28 U.S.C. § 1292(b), if this Court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, [s]he shall so state in writing in such order."

Although the Eighth Circuit has yet to weigh in on this issue, as this Court noted in its 2017 Order, there is a split of authority among the federal district and circuit courts as to whether an indemnity agreement is necessary for the PAA to apply to a plaintiff's claims, thus satisfying the "substantial ground for difference of opinion" of a controlling question of law.  *See* Dkt. 24-1 at 15-24; *Strong v. Republic Services, Inc.*, Case No. 4:17-cv-01645-JCH, Dkt. 42 at 15-24 (E.D. Mo.); *cf. Eggleton v. Plasser & Theurer Exp. Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 585 (8th Cir. 2007) (permitting interlocutory appeal, in part, because of "the existence

---

[18] Otherwise, Cotter would be unable to appeal or seek reconsideration of a remand order.  *See Kalousek v. Union Sec. Ins. Co.*, No. 07–0387–CV–W–ODS, 2008 WL 4279604, at *3 (W.D. Mo. Sept. 12, 2008) (involving removal of action to federal court, a motion to remand, the Court's determination that it lacked jurisdiction and would remand, but staying the order to remand and certifying the ERISA preemption question for interlocutory appeal to the Eighth Circuit); *see also Izaak Walton League of Am., Inc. v. Kimbell*, 558 F.3d 751, 762 (8th Cir. 2009) ("The courts of appeals that have considered the question, however, have uniformly held that, as a general rule, a remand order is 'interlocutory' rather than 'final,' and thus may not be appealed immediately (*unless, of course, it is certified pursuant to § 1292*)) (emphasis added); *In re TMI Litig.*, 940 F.2d 832, 848 (3d Cir. 1991) ("We believe, therefore, that we have jurisdiction, pursuant to 28 U.S.C. § 1292(b), to hear this appeal" concerning, among other things, removability of a cause of action under PAA).

of . . .  conflicting" decisions within the circuit on a controlling question of law (*i.e.*, choice of law determination); *see also Victor v. Hopkins*, 90 F.3d 276 (8th Cir. 1996).

In addition, because there are several pending remand motions before this Court in related actions, "an immediate appeal from the order may materially advance the ultimate termination of" not just this litigation, but several others, and ensure uniform results amongst them.

IV.   **Conclusion**

For the foregoing reasons, the Court should deny Plaintiffs' and Bridgeton's motions to remand and allow the case to proceed in federal court, where it properly belongs.  To decide otherwise would mean that any plaintiff can plead around the PAA and gut the protections that Congress intended to afford to licensees, such as Cotter, a result that Congress certainly did not intend.  This also risks creating inconsistent results for the many cases currently pending in federal court that are connected to the St. Louis Manhattan Project wastes. Cotter also joins in Plaintiffs' request for oral argument on the pending motions to remand.

In the alternative, if the Court is inclined to remand the action, Cotter respectfully requests that it stay remand, certify the matter for interlocutory appeal under 28 U.S.C. § 1292(b) as to whether an indemnity agreement is required for a licensee to obtain the protections of the PAA, and stay further proceedings while the appeal is pending.  The answer to this question would determine whether this Court has subject-matter jurisdiction over this litigation, and an immediate appeal from the Court's remand order will materially advance the ultimate conclusion of the litigation.

January 4, 2019                                    Respectfully submitted,

                                                   /s/ John McGahren
                                                   MORGAN LEWIS & BOCKIUS, LLP
                                                   John McGahren (admitted *pro hac vice)*
                                                   john.mcgahren@morganlewis.com
                                                   Stephanie Feingold (admitted *pro hac vice*)
                                                   stephanie.feingold@morganlewis.com
                                                   502 Carnegie Center
                                                   Princeton, NJ 08540
                                                   609.919.6600 (telephone)
                                                   609.919.6701 (facsimile)

                                                   J. Yasmin Tayyab (MO Bar No. 66820)
                                                   yasmin.tayyab@morganlewis.com
                                                   77 West Wacker Drive
                                                   Chicago, IL 60601-5094
                                                   312.324.1000 (telephone)
                                                   312.324.1001 (facsimile)

                                                   ATTORNEYS FOR THIRD-PARTY
                                                   DEFENDANT COTTER CORPORATION
                                                   (N.S.L.)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I served Third-Party Defendant Cotter Corporation (N.S.L.)'s Brief in Opposition to Plaintiffs' and Bridgeton Landfill, LLC's Motions to Remand by filing the via CM/ECF to distribute to all counsel of record.


DATED: January 4, 2019                     /s/ John McGahren

                                           John McGahren